UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

**CLAY LANDIS RIGGS**  CIVIL ACTION NO. 3:17-CV-473

**VS.**  SECTION P

JUDGE ROBERT G. JAMES

**CRAWFORD JORDAN, ET AL.**  MAGISTRATE JUDGE HAYES

### REPORT AND RECOMMENDATION

Before the court is the civil rights complaint (42 U.S.C. §1983) of *pro se* plaintiff Clay Landis Riggs, filed *in forma pauperis* on March 28, 2017. Riggs is a pre-trial detainee at the Jackson Parish Correctional Center, Jonesboro, Louisiana. Plaintiff names the following as his defendants: (1) Crawford Jordan; (2) Winn Parish Sheriffs Department; (3) Jackson Parish Correctional Center; (4) Herman Casstete; (5) Keith Gates[1]; (6) State of Louisiana; (7) 8th Judicial District Court; (8) Judge 8th Judicial District Court; (9) Timmy Ducote; (10) Robert Bannon; (11) Jeremy Underwood; (12) Judge Derr; (13) Steven D. Crews;(14) R. Christopher Nevils; (15) Lt. Kelley; (16) Sgt. Williams; and (17) Capt. Stewart.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court.

### *Statement of the Case*

On May 12, 2017, Plaintiff's complaint was properly filed. [Rec. Doc. 6] In this initial complaint, plaintiff asserts that while housed at the Jonesboro Correctional Center, he requested indigent stamps and envelopes but was told inmates must wait 90 days before receiving indigent

---

[1] Named in the Complaint as both Keith Gates and Justin Keith Gates.

1

mail supply. He also alleges that despite requesting legal material, he was told that pretrial inmates cannot receive any legal assistance or legal material at JPCC.

He further claims that there are jurisdictional issues related to the incarceration of his natural body, as there has been no answering of his Affidavit of Denial of Corporate Existence filed in the 8th Judicial District Clerk of Court, nor could a sworn statement to proceed under common law jurisdiction be produced by the State's Attorney, Judge, Sheriff's Department or United States Forestry Department.

Plaintiff contends that JPCC inmate banking refused to provide account information necessary to proceed in forma pauperis in this court.

He alleges that Sheriff Crawford Jordan has stolen personal property from plaintiff, including a 1998 F250 4x4, a 2013 Harley Davidson motorcycle and a 1985 3-wheeler.

Moreover he argues that he is currently being subjected to "wrongful incarceration by fraud."

Plaintiff prays for compensatory damages, the return of his personal property and a restraining order to prevent retaliation.

On May 24, 2017, plaintiff filed his first Supplemental Complaint [Rec. Doc. 12], in which he makes allegations that Winn Parish attorneys Justin Keith Gates and Herman Casette were ineffective in their representation of plaintiff. He also names Steven D. Crews and R. Christopher Nevils, members of the Louisiana State Bar, as defendants, but provides no details regarding his claims against them. He again reiterates that he is a "living breathing free man of flesh and blood and should be able to live free of corporate harassment." *Id.* at p. 4.

On September 8, 2017, the undersigned conducted an initial review of this matter and instructed plaintiff to amend his complaint within 30 days to provide more detailed information

regarding his claims and to cure deficiencies outlined therein. [Rec. Doc. 20]

On September 20, 2017, plaintiff filed an supplemental complaint. [Rec. Doc. 21] However, he failed to address the issues outlined in this Court's September 8, 2017 Order. Rather, he reiterates arguments related to the jurisdiction of the state court in his criminal matter.

On October 6, 2017, plaintiff filed a final supplemental complaint, pursuant to which he asserts that he sustained blunt trauma to his eyes due to retaliation for filing the instant complaint. [Rec. Doc. 22] Plaintiff alleges that on September 15, 2017, Lt. Kelly, Sgt. Williams and Capt. Stewart entered L Dorm at JPCC after he requested to speak with Warden Ducote. Plaintiff asserts that he was standing in his bunk area with bond hands raised above his head "in a non threatening manner," when he was approached by the prison officials and shot in the eyes with a G9 Mace Gun, "paint ball gun," by Capt. Stewart. *Id.* at p. 2 He received medical treatment, but alleges that his eyes have still not healed and he suffers from pain and blurriness. He seeks a restraining order to prevent any further retaliation. He also requests that all parties involved submit their affidavit answering his affidavit of denial of corporate existence "using their Christian or family name for signature with proof of claims against my natural body that provides the bases for the use of force."

*Law and Analysis*

*1. Initial Review*

When a prisoner sues an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983, the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A; 28 U.S.C.1915(e)(2). *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990).

A claim is frivolous if it lacks an arguable basis in law or in fact. *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir.1993); see, *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992). A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986). District courts must construe *in forma pauperis* complaints liberally, but, they are given broad discretion in determining when such complaints are frivolous. *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). Nevertheless, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

2. **Defendants**

    A. ***Winn Parish Sheriff's Department***

A Louisiana parish sheriff's office is not a legal entity capable of being sued. *Cozzo v.*

4

*Tangipahoa Parish Council-President Government*, 279 F.3d 273, 283 (5th Cir.2002); *Causey v. Parish of Tangipahoa*, 167 F.Supp.2d 898, 904 (E.D.La.2001); *Wetzel v. St. Tammany Parish Jail*, 610 F.Supp.2d 545, 548 (E.D.La.2009); *Ruggiero v. Litchfield*, 700 F.Supp. 863, 865 (M.D.La.1988). Accordingly, it is recommended that the Winn Parish Sheriff's Department be dismissed.

### B. *Jackson Parish Correctional Center*

Plaintiff sued the JPCC. Fed.R.Civ.P. Rule 17(b) provides that the "capacity to sue or be sued shall be determined by the law of the state in which the district court is held." Thus, Louisiana law governs whether the the JPCC has the capacity to be sued in this action. Under Louisiana law, to possess such a capacity, an entity must qualify as a "juridical person." This term is defined by the Louisiana Civil Code as "... an entity to which the law attributes personality, such as a corporation or partnership." La. Civ.Code Ann. art. 24. The JPCC is not a juridical person and therefore, it is recommended that it be dismissed.

### C. *Herman Casstete, Justin Keith Gates, Steven D. Crews, R. Christopher Nevils*

Plaintiff names Herman Casstete, his court appointed attorney, Justin Keith Gates, his court appointed attorney whom he also alleges was employed by the district attorney's office, Steven D. Crews, Bar # 01797, and state's attorney R. Christopher Nevils, Bar # 24179, as defendants.

Section 1983 claims require that the conduct complained of be done under color of law, and private attorneys, even court-appointed attorneys, are not official state actors, and generally are not subject to suit under section 1983. *Nelson v. Stratton*, 469 F.2d 1155 (5th Cir.1972), *cert. denied*, 410 U.S. 957, 93 S.Ct. 1432, 35 L.Ed.2d 691 (1973). As a matter of law, the acts of an individual's attorney in representing a criminal defendant do not constitute the necessary "state action" for a

viable claim under § 1983. *Polk County v. Dodson*, 454 U.S. 312, 102 S. Ct. 445, 70 L. Ed. 2d 509 (1981). It is recommended that plaintiff's court appointed attorneys be dismissed.

With respect to those attorneys in the district attorney's office, claims against those attorneys should be dismissed as well. A district attorney is absolutely immune in a civil rights suit for any action taken pursuant to his role as prosecutor in preparing for the initiation of judicial proceedings and in presenting the State's case. See *Kalina v. Fletcher*, 522 U.S. 118, 129, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997); *Imbler v. Pachtman*, 424 U.S. 409, 430-31, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); *Esteves v. Brock*, 106 F.3d 674, 676 (5th Cir.1997). Plaintiff's claims against attorneys in the district attorney's office are apparently based on their role as prosecutors. As the conduct complained of was taken in these defendants' roles as the State's advocate, they are entitled to absolute prosecutorial immunity. *See Imbler*, 424 U.S. at 430 (absolute immunity protected prosecutor from suit even for knowingly using perjured testimony and suppressing material evidence at plaintiff's murder trial).

### D.    *State of Louisiana*

Plaintiff names the State of Louisiana as a defendant herein. However, the state is not a "person" within the meaning of 42 U.S.C. § 1983. *Stotter v. University of Texas at San Antonio,* 508 F.3d 812, 821 (5th Cir.2007); *Will v. Michigan State Dep't of Police*, 491 U.S. 58, 71 (1981). Furthermore, any § 1983 claim against the state is also barred by the Eleventh Amendment. U.S. Const. amend. XI; *Rodriguez v. Texas Commission on the Arts*, 199 F.3d 279, 280 (5th Cir.2000) ("Citizens may not bring suit against a state or any instrumentality thereof without the state's consent. The Eleventh Amendment also bars lawsuits against a state agency if the agency is so closely connected to the state that the state itself is the party in interest. *See Vogt v. Board of*

*Comm'rs of the Orleans Levee District*, 294 F.3d 684 (5th Cir.2002). It is recommended that this defendant be dismissed.

### E. 8th Judicial District Court and Judge 8th Judicial District Court, Judge Derr

Judges have absolute immunity for acts done within the scope of their jurisdiction. *Stump v. Sparkman*, 435 U.S. 349, 356, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978). The Fifth Circuit has delineated three elements to identify acts as being judicial in nature: "(1) normal judicial functions that (2) occurred in the judge's court or chambers and were (3) centered around a case pending before the judge." *Eitel v. Holland*, 787 F.2d 995, 998 (5th Cir.1986). These factors are construed liberally in favor of immunity. *Adams v. McIlhany*, 764 F.2d 294, 297 (5th Cir.1985). As claims against these defendants meet this criteria, it is recommended that these defendants be dismissed.

### F. Winn Parish Sheriff Crawford Jordan and JCC Warden Timmy Ducote

Plaintiff has sued Winn Parish Sheriff Crawford Jordan and JPCC Warden Timmy Ducote. Plaintiff is hereby advised: "Supervisory officials may be held liable only if: (i) they affirmatively participate in acts that cause constitutional deprivations; and (ii) implement unconstitutional policies that causally result in plaintiff's injuries." *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir.1992), *cert. denied*, 508 U.S. 951, 113 S.Ct. 2443, 124 L.Ed.2d 660 (1993). "Vicarious liability does not apply to § 1983 claims." *Pierce v. Texas Dept. of Crim. Justice, Inst. Div.*, 37 F.3d 1146, 1150 (5th Cir.1994), *cert. denied*, 514 U.S. 1107, 115 S.Ct. 1957, 131 L.Ed.2d 849 (1995). "Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir.), *cert. denied*, 464 U.S. 897, 104 S.Ct. 248, 78 L.Ed.2d 236 (1983). Plaintiff has failed to allege facts sufficient to demonstrate either personal involvement or the implementation of unconstitutional policies by Crawford Jordan or Timmy Ducote and, therefore, it is recommended

that these defendants be dismissed.

### G. *Robert Bannon and Jeremy Underwood*

In his Original Complaint [Rec. Doc. 6], plaintiff names Robert Bannon, employed by the United States Forestry Service, and Jeremy Underwood as defendants. However, he has failed to state any facts regarding specific claims against these individuals in his original complaint, or in any of his subsequent supplemental filings. Accordingly, it is recommended that these defendants be dismissed.

### 3. **Claims**

#### A. **Indigent Stamps**

Plaintiff complains that while incarcerated at the Jonesboro Correctional Center, he requested indigent stamps and envelopes but was told inmates must wait 90 days before receiving indigent mail supply. Plaintiff has not alleged whether the mail supplies he requested is for legal or non-legal mail. With respect to non-legal mail, his claim would fail because an inmate simply "does not have a freestanding constitutional right to free postage." *Walker v. Davis*, 533 Fed. App'x 471 (5th Cir.2013), cert. denied, 134 S.Ct. 643 (2013); accord *Lee v. Perry*, No. 93–4291, 1993 WL 185752 (5th Cir. May 19, 1993).

That general rule, however, does not apply to legal mail. Because inmates have a recognized right of access to the courts, indigent inmates must be provided with postage for the purpose of sending legal mail. As the Supreme Court noted in *Bounds v. Smith,* 430 U.S. 817, 824–25 (1977): "[O]ur decisions have consistently required States to shoulder affirmative obligations to assure all prisoners meaningful access to the courts. It is indisputable that indigent inmates must be provided at state expense with paper and pen to draft legal documents with notarial services to authenticate

them, and with *stamps to mail them*." *Id.* at 824–25 (emphasis added). Reflecting on the foregoing language, the United States Second Circuit Court of Appeals has nevertheless noted that the right has limitations:

> In its opinion in *Bounds*, the Court also stated that "[i]t is indisputable that indigent inmates must be provided at state expense with paper and pen to draft legal documents ... and with stamps to mail them." 430 U.S. at 824–25, 97 S.Ct. at 1496. Although this statement itself was unqualified, we do not read it as requiring that the indigent inmate be provided unlimited free postage, but only that he not be denied "a reasonably adequate" (*Id.* at 825, 97 S.Ct. at 1496) amount of postage to present his claimed violations of fundamental constitutional rights to the courts. Accord *Twyman v. Crisp*, 584 F.2d 352, 359 (10th Cir.1978) (per curiam); *Guajardo v. Estelle*, 580 F.2d 748, 762–63 (5th Cir.1978); *Bach v. Coughlin*, 508 F.2d [303,] 307 [7th Cir.1974) ]. Thus, a state is entitled to adopt reasonable postage regulations in light of, for example, prison budgetary considerations. *Id.* at 307–08; cf. *Bounds v. Smith*, 430 U.S. at 825, 97 S.Ct. at 1496 (Court's determination that adequate library facilities must be provided was "not to say that economic factors may not be considered ... in choosing the methods used to provide meaningful access").

*Chandler v. Coughlin*, 763 F.2d 110, 114 (2nd Cir.1985); accord *Myers v. Hundley*, 101 F.3d 542, 544 (8th Cir.1996) ("Inmates do not have a right ... to unlimited stamp allowances for legal mail. Instead, the duty to make such arrangements is bounded by the inmates' right of meaningful access to the courts.")

Plaintiff failed to amend his complaint to state whether he requested stamps and envelopes for legal or non-legal mail, or any additional facts regarding this claim. However, the plethora of supplemental complaints and various motions filed by plaintiff belie his claim that he has been denied supplies necessary for legal mail.

**B.     *Legal Assistance***

Plaintiff further contends in his original complaint that he has been denied legal assistance. Prisoners have a constitutionally recognized right of access to the courts. *Bounds v. Smith,* 430 U.S.

817, 821, 97 S. Ct. 1491, 52 L. Ed. 2d 72 (1977).  This right "'is founded in the Due Process Clause and assures that no person will be denied the opportunity to present to the judiciary allegations concerning violations of fundamental constitutional rights.'" *Brewer v. Wilkinson*, 3 F.3d 816, 820 (5th Cir.1993) (quoting *Wolff v. McDonnell*, 418 U.S. 539, 579, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1979)).  It is also an "aspect of the First Amendment right to petition the government for grievances." *Id.* at 820-21.  The right includes either "adequate law libraries or adequate assistance from persons trained in the law."  *Bounds*, 430 U.S. at 828.  The right does not guarantee any "particular methodology but rather the conferral of a capability — the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts."  *Lewis v. Casey*, 518 U.S. 343, 356, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996).

To succeed on a claimed denial of access to courts, a plaintiff must show that he lost an actionable claim or was prevented from presenting such a claim because of the alleged denial.  See *id.; Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir.1996) (holding that to state a sufficient claim of denial of access to the courts, plaintiff must demonstrate that his position as a litigant was prejudiced as a direct result of the denial of access).  The "injury requirement is not satisfied by just any type of frustrated legal claim." *Lewis*, 518 U.S. at 353.  Rather, a plaintiff must demonstrate that the lack of access has prevented him from filing or caused him to lose a pending case that attacks either his conviction or seeks "to vindicate 'basic constitutional rights'" in a civil rights action under 42 U.S.C. § 1983. *Id.* at 353-54 (quoting *Wolff v. McDonnell*, 418 U.S. 539, 579, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974)).  The *Lewis* Court used the analogy of a prisoner who is denied access to that of a healthy prisoner who has been deprived of medical treatment. In both cases, neither the access deprived prisoner, nor the healthy prisoner,  have sustained constitutional injury, and thus, are not

entitled to relief under Section 1983. 518 U.S. at 351. The Court emphasized that the court's role is to provide relief to claimants who have suffered actual harm, not to interfere with the management of prisons.

Accordingly, the Fifth Circuit has held that a prisoner cannot prevail on an access to the courts claim without proving an actual injury in non-frivolous litigation as a result of the defendant's alleged unconstitutional conduct. *Ruiz v. United States*, 160 F.3d 273, 275 (5th Cir. 1998); *Chriceol v. Phillips*, 169 F.3d 313, 317 (5th Cir. 1999).

Plaintiff failed to amend his complaint to identify any motions that he was unable to file or any nonfrivolous claim that he was unable to pursue. He failed to allege any facts that amount to a denial of his constitutional right to access to courts that hindered his ability to file a nonfrivolous claim and, as such, it is recommended that this claim be dismissed.

    C.    ***Inmate Banking***

Plaintiff alleges that inmate banking at JPCC refused to provide his account information to this Court so that he may proceed in forma pauperis. On May 22, 2017, the requested account information was filed into the record [Rec. Doc. 9] and on May 24, 2017 [Rec. Doc. 11], this Court granted pauper status to plaintiff. Accordingly, this claim is MOOT and should be dismissed.

    D.    ***Stolen Personal Property***

Plaintiff asserts that Sheriff Crawford Jordan has stolen personal property from plaintiff, including a 1998 F250 4x4, a 2013 Harley Davidson motorcycle and a 1985 3-wheeler. Neither negligent nor intentional deprivations of property by state officials rise to the level of due process violations if state law provides adequate post-deprivation. *Walker v. Jackson Parish Dist. Atty.'s Office*, 2015 U.S. Dist. LEXIS 25943, 2015 WL 920723 (W.D. La. Mar. 3, 2015) (citing *Hudson*

11

*v. Palmer*, 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L. Ed. 2d 393 (1984)). The burden is on the plaintiff to show that the remedy is not adequate. *Id.* (citing *Marshall v. Norwood*, 741 F.2d 761, 764 (5th Cir. 1984)). Louisiana law provides an adequate remedy for both intentional and negligent deprivations of property. *Id.* (citing *Hutchinson v. Prudhomme*, 79 Fed. App'x 54, 55 (5th Cir. 2003); *Copsey v. Swearingen*, 36 F.3d 1336, 1342-43 (5th Cir. 1994)). "[T]he Fifth Circuit has ruled that plaintiffs seeking to redress intentional deprivations of property by state actors must assert such claims as state law tort claims." *Id.* (quoting *Robertson v. Town of Farmerville*, 830 F.Supp. 2d 183, 192 (W.D. La. 2011)). Accordingly, it is recommended that this claim be dismissed.

### E. *Habeas Corpus Relief*

Although plaintiff filed his complaint as a civil rights complaint pursuant to Section 1983, it appears that in addition to money damages, he seeks his immediate release from custody, arguing there is no jurisdiction to keep him incarcerated, repeatedly referencing an affidavit of denial of corporate existence. Thus, to the extent that his complaint may be construed as challenging the legality of his confinement or as seeking his immediate release from confinement, such claims must be raised by petition for *habeas corpus* relief filed pursuant to 28 U.S.C. §2241 or 2254. *See Carson v. Johnson*, 112 F.3d 818, 820 (5th Cir.1997); *Cook v. Texas Dep't of Criminal Justice Transitional Planning Dep't*, 37 F.3d 166, 168 (5th Cir.1994); *Pugh v. Parish of St. Tammany*, 875 F.2d 436, 439 (5th Cir.1989); *Preiser v. Rodriguez*, 411 U.S. 475, 500, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973); *Serio v. Members of the La. State Board of Pardons*, 821 F.2d 1112, 1117 (5th Cir.1987). "Challenges to the validity of any confinement or to particulars affecting its duration are the province of *habeas corpus*." *Muhammad v. Close*, 540 U.S. 749, 750, 124 S.Ct. 1303, 1304 (2004).

Therefore, to the extent that plaintiff seeks his immediate release from custody in this civil

rights litigation, such claim should dismissed and raised properly via a petition for writ of habeas corpus.

### F.  *Excessive Force/Retaliation*

Finally, plaintiff alleges in his most recent supplemental complaint [Rec. Doc. 22], that defendants Kelley, Williams and Stewart used excessive force in retaliation for his filing of the instant complaint and he seeks a restraining order against them.  Accepting plaintiff's allegations regarding the incident of September 15, 2017, as true, the Court cannot determine whether plaintiff was subject to excessive force and whether that force, if proven, was out of retaliation.  Accordingly, it is recommended that plaintiff's claims of excessive force and retaliation against defendants Kelley, Williams and Stewart be retained and ultimately be addressed on the merits*.*

### *Conclusion*

**IT IS RECOMMENDED**  that plaintiff's Civil Rights Complaint be **DISMISSED WITH PREJUDICE** as frivolous, for failing to state a claim for which relief may be granted, and as it seeks monetary relief against a defendant who is immune from such relief, in accordance with the provisions of 28 U.S.C. §1915(i), (ii), and (iii)**.**

**IT IS FURTHER RECOMMENDED** that plaintiff's excessive force and retaliation claims against Lt. Kelley, Sgt. Williams and Capt. Stewart be retained and service ordered on these defendants.[2]

**IT IS FURTHER RECOMMENDED** that the Motion to Produce Affidavit [Rec. Doc. 13], Motion to Produce Contract [Rec. Doc. 14], Motion to Produce Jurisdiction [Rec. Doc. 15], Motion to Preserve Courthouse Surveillance Tapes or Footage [Rec. Doc. 16], Motion to Preserve Motion

---

[2]Claims against these defendants are addressed in a separate order.

Hearing Tapes [Rec. Doc. 17] and Motion for Judgment by Default [Rec. Doc. 23] be **DENIED**.

**Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing. Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See, Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

In Chambers at Monroe, Louisiana, January 4, 2018.

_____
KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE